UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                           )
UNITED STATES       )
                           )
       v.                )              No. 05CR10010-NMG
                           )
SEVERIN YELAUN     )
_____)

**DEFENDANT SEVERIN YELAUN'S MEMORANDUM
IN SUPPORT OF HIS MOTION FOR
<u>SEVERANCE OF DEFENDANTS</u>**

<u>**Introduction**</u>

Defendant Severin Yelaun has moved to sever his trial from that of all other defendants. Defendant argues herein that the Court should sever defendant Yelaun from his co-defendants because, under F.R. Crim P. 14, he would be substantially prejudiced by joinder.  First, defendant would be substantially prejudiced by admission of statements of his co-defendants in violation of <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  Second, the defendants will present mutually antagonistic defenses.

<u>**Statement of the Case**</u>

The indictment in this case was returned on January 13, 2005 against this defendant and three others.  The four defendants are charged together with mail fraud, by using the mail to obtain money from insurance companies by mailing the companies false and fraudulent documents (Counts 1-37; 18 U.S.C. §1341); wire fraud, by using a fax machine to obtain money from insurance companies by faxing the companies false and fraudulent documents (Counts 38-40; 18 U.S.C. §1343); health care fraud, by executing a scheme to fraudulently obtain money

from health care benefit programs (Count 41; 18 U.S.C. §1347); and conspiracy to commit mail fraud, wire fraud and health care fraud (Count 42; 18 U.S.C. §371). The conduct charged in the mail, wire and healthcare fraud counts is alleged to have occurred between January 29, 1999 and 2002. The conduct charged in the conspiracy count is alleged to have occurred between January 1999 and 2003. Defendants Severin Yelaun and Igor Moyseyev are also charged with money a laundering conspiracy (Count 43; 18 U.S.C. §1956(h)); and money laundering (Counts 44-58, 18 U.S.C. §1956 (a) (1) (A) (I)) from January 1999 to 2002.

The allegations of fraud and money laundering arise out of diagnostic testing and the subsequent billing for these diagnostic procedures at two Massachusetts clinics: Global Tech Diagnostics in Chelsea, MA and Lynn Diagnostics Management in Lynn, MA. The indictment alleges that Yelaun was an owner and/or manager of Global Tech and Lynn Diagnostics; that Moyseyev was an owner and manager of Global Tech; that Tamaren is a medical doctor who wrote prescriptions and signed other forms requesting diagnostic procedures for his patients, without regard to medical necessity, and then referred his patients to Global Tech and Lynn Diagnostics for the procedures; and that Montoni is a chiropractor who wrote prescriptions and signed other forms requesting diagnostic procedures for his patients, without regard to medical necessity, and then referred his patients to Global Tech and Lynn Diagnostics, where he signed reports of diagnostic testing that he did not conduct.

Each of the defendants has been interviewed by Special Agents of the F.B.I. several times and each has given statements about the fraud alleged in the indictment. Each defendant blames at least one other defendant for the alleged wrongdoing.

<u>**Argument**</u>

**THE COURT SHOULD SEVER DEFENDANT YELAUN FROM
THE OTHER CO-DEFENDANTS SINCE UNDER F.R. CRIM. P. 14
<u>HE WOULD BE SUBSTANTIALLY PREJUDICED BY JOINDER</u>**

Even where the parties are not technically misjoined under Rule 8(b), Rule 14(a)

authorizes the Court to grant a severance if joinder "appears to prejudice a defendant."   The

Court should grant such a severance "if there is a serious risk that a joint trial would compromise

a specific trial right of one of the defendants, or prevent the jury from making a reliable

judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993).  "[A]

trial judge has 'considerable latitude' in deciding severance questions and . . . the judge's

resolution of them 'will be overturned only if that wide discretion is plainly abused.'" <u>United

States v. O'Bryant</u>, 998 F.2d 21, 25 (1st Cir. 1993)(quoting <u>United States v. Natanel</u>, 938 F.2d

302, 308 (1st Cir. 1991)).

In this case, defendant would be prejudiced by a joint trial with his co-defendants, as set

forth below.

**A.  Defendant Would Be Prejudiced by Admission of Statements of His
<u>Co-Defendants in Violation of Bruton V. United States</u>**

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court held "that a

defendant is deprived of his right under the Confrontation Clause when his nontestifying

codefendant's confession naming him as a participant in the crime is introduced at their joint

trial, even if the jury is instructed to consider that confession only against the codefendant."

<u>Richardson v. Marsh</u>, 481 U.S. 200, 201-02 (1987).  When a case falling within <u>Bruton</u> is

identified pretrial, there are generally three alternatives: 1) severance of the implicated

defendant; 2) a joint trial at which the prosecution elects to make no use of the confession; or 3)

3

a joint trial at which the confession is admitted after it has been "redacted," that is "redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211. LaFave, Criminal Procedure, 2d ed. (1999), Vol. 4 §17.2(b), p.613.

In Gray v. Maryland, 523 U.S. 185 (1998), the Court clarified and narrowed the redaction option, holding that "redactions that replace a proper name with an obvious blank, the word "delete," a symbol, or similarly notify the jury that a name has been deleted are similar enough to Bruton's unredacted confessions as to warrant the same legal results." Id. at 195. The Court recognized that a blank space in an obviously redacted confession "points directly to the defendant," id., and "underscore[s] the answer." Id. at 194.

In this case, the defendants have been interviewed by the F.B.I. multiple times. Yelaun has had two interviews. Moyseyev has had at least three interviews. Tamaren has been interviewed at least five times and Montoni has been interviewed at least three times. Each defendant implicates his co-defendants. Some defendants confessed to wrong-doing, but also named certain co-defendants as participants in the crime. At this point, defendant Yelaun does not know which, if any, of his co-defendants will become co-operating witnesses. Defendant Yelaun does not know which of the numerous co-defendant statements the government will seek to introduce in a joint trial of all four defendants. Defendant Yelaun does not know if the government will seek to redact the statements, and if so, how the government will seek to redact the statements. Defendant, therefore, requests that the government provide to defendants the statements, or redacted statements, it will seek to introduce at a trial of all four defendants. Defendant requests that he then be permitted to file a supplemental memorandum in response to the government's submission. At a minimum, defendant requests that this Court order the

government, pursuant to F.R. Crim. P. 14(b), to "deliver to the Court for in camera inspection any defendant's statement that the government intends to use as evidence."[1]

### B. <u>The Four Defendants Will Present Mutually Antagonistic Defenses</u>

While "[m]utually antagonistic defenses are not prejudicial <u>per se</u>," they do require severance where they create a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, <u>supra</u> at 938.  That situation occurs when "the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other." <u>United States v. Rose</u>, 104 F.3d 1408, 1415 (1st Cir. 1997).  This is precisely the situation here.

Defendant Yelaun's defense will be that, to the extent there was any fraudulent billing, only one owner/manager was aware of it and/or orchestrated it and that person was Igor Moyseyev.  Defendant Moyseyev's defense will be exactly the converse.  He will assert only one owner/manager knew of any fraud and that was Severin Yelaun.  Similarly, defendants Montoni and Tamaren appear to be asserting that to the extent they signed any fraudulent prescriptions or diagnostic test reports, they did so because they were ordered to do so by Yelaun and/or Moyseyev.  Defendant will deny having given any such orders.  A trial of all four defendants will be prejudicially confusing.  The tensions between the defenses, most particularly the

---

[1] F.R. Crim. P. 14(b) provides:

> Before ruling on a defendant's Motion to Sever, the Court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

defenses of Yelaun and Moyseyev, will lead the jury to believe one defense only at the expense of the other. This is a classic instance for the proper exercise of the Rule 14 severance power.

### Conclusion

For the reasons set forth above, the Court should sever defendant Yelaun from all other defendants. Alternatively, prior to ruling on the Motion to Sever, the Court should order the government to identify those statements, or portions of statements, it will seek to introduce in a joint trial of all four defendants and permit defendant to file a response to the government's submission. As a further alternative, the Court should order the government to produce, for an in camera inspection, the statements of the defendants it intends to use at trial.

Respectfully Submitted,

/s/ Jonathan Shapiro
Jonathan Shapiro
BBO No. 454220
Patricia Garin
BBO No. 544770
Stern, Shapiro, Weissberg,
     & Garin, LLP
90 Canal Street
Boston, MA 02114
(617) 742-5800

Dated: March 9, 2006

G:\SSWG\YELAUN\memorandum in support for severance.wpd