```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3

 4   UNITED STATES OF AMERICA        )
                                     )
 5                                   )
                                     )
 6   vs.                             )  CR No. 05-10010-NMG
                                     )
 7                                   )
     SEVERIN YELAUN                  )
 8

 9
     BEFORE:  THE HONORABLE NATHANIEL M. GORTON
10

11
                  EXCERPT OF DAY ONE OF JURY TRIAL
12                            Motions

13

14

15      John Joseph Moakley United States Courthouse
                       Courtroom No. 4
16                   One Courthouse Way
                       Boston, MA 02210
17               Monday, December 4, 2006

18

19

20
                  Cheryl Dahlstrom, RPR, RMR
21                   Official Court Reporter
         John Joseph Moakley United States Courthouse
22             One Courthouse Way, Room 3209
                       Boston, MA 02210
23          Mechanical Steno - Transcript by Computer

24

25
```

```
 1    APPEARANCES:

 2         OFFICE OF THE UNITED STATES ATTORNEY
           By:  William D. Weinreb, AUSA, and
 3              Gregg D. Shapiro, AUSA
           1 Courthouse Way
 4         Boston, Massachusetts 02210
           On behalf of the Government.
 5
           STERN, SHAPIRO, WEISSBERG & GARIN
 6         By:  Jonathan Shapiro, Esq., and
                Jeffrey Weisner, Esq.
 7         90 Canal Street
           Boston, Massachusetts 02114-2022
 8         On behalf of the Defendant.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (EXCERPT AS FOLLOWS:
 2              THE COURT:  There were some issues that Mr. Weinreb
 3    wanted to bring to the Court's attention.
 4              MR. WEINREB:  Yes, your Honor.  To begin with, the
 5    government is prepared to voluntarily dismiss certain counts of
 6    the indictment primarily in an effort to streamline the trial.
 7    I've already notified the defense of which counts.  And I'm
 8    prepared to do it orally or by motion, whichever the Court
 9    prefers.
10              THE COURT:  Well, you can do it orally now, and Mr.
11    Shapiro can respond if he wants to after you've made your
12    presentation.
13              MR. WEINREB:  Very well.  The government moves to
14    dismiss the following counts of the indictment:  These are mail
15    fraud counts, Count No. 5, 6, 7, 15, 16, 18, 19, 20, 22, 29,
16    and 35.  We also move to dismiss the following three counts,
17    which are wire fraud counts:  38, 39 and 40.  Those are all
18    three wire fraud counts in the indictment, which would obviate
19    the need for instructions to the jury on wire fraud.
20              THE COURT:  All right.
21              MR. WEINREB:  Finally, the government moves to dismiss
22    Counts 44 through 58.  Those are the substantive money
23    laundering counts.  The government will proceed, however, on
24    Count 43, which is the money laundering conspiracy count.
25              THE COURT:  All right.  Mr. Shapiro, do you wish to
```

```
 1   respond?
 2           MR. JONATHAN SHAPIRO:  I have no objection.
 3           THE COURT:  Okay.  Then they will be dismissed.
 4   Anything further?
 5           MR. WEINREB:  Yes, your Honor.  Mr. Shapiro and I
 6   conferred on several matters that the Court -- some the Court
 7   had specifically asked us to confer about.  Some came up in the
 8   course of reviewing the evidence together.  With respect to the
 9   transcript that the government intends to introduce into
10   evidence, it's my understanding that Mr. Shapiro has no
11   objections to its accuracy.
12           THE COURT:  All right.  You want to respond to that?
13           MR. JONATHAN SHAPIRO:  That is correct.
14           THE COURT:  Okay.  Go ahead.
15           MR. WEINREB:  Furthermore, at the defense's request,
16   we have redacted the portion of the telephone call and the
17   corresponding portion of the transcript to eliminate certain
18   nonpertinent material, just letting the Court know that was
19   done.
20           THE COURT:  That's fine.
21           MR. WEINREB:  There are a couple of, I believe,
22   objections to evidence the government intends to introduce.
23   I'll attempt to explain it to the Court, and if Mr. Shapiro
24   feels that I'm not conveying his objections adequately, then
25   I'll ask if he might step up and say it instead.
```

1          The government's first witness is going to be Special
2  Agent Mary Brennan of the FBI.  I intend to ask her a few
3  questions, three or four questions, simply designed to kick off
4  the presentation of the government's evidence by explaining
5  essentially that there was an investigation that resulted in
6  the arrest of Severin Yelaun; that it began at a certain point
7  in time; that it was an investigation into possible healthcare
8  fraud in certain areas; and that it eventually focused in on
9  four individuals, who are the four individuals named in the
10 indictment.  I don't intend to ask her, of course, to state any
11 conclusions or opinions about anybody's responsibility for any
12 criminal conduct, simply those four questions, to locate the
13 jury and get everything moving.  It's my understanding that Mr.
14 Shapiro objects to all of those questions.
15         THE COURT:  All right.  Mr. Shapiro, why?
16         MR. JONATHAN SHAPIRO:  Well, in my conversation with
17 Mr. Weinreb, he's indicated that what he intends to do is use
18 to a certain extent Miss Brennan as a -- to summarize some of
19 the early aspects of the case, which would include the fact
20 that there was an investigation.  The language that Mr. Weinreb
21 used initially in discussing it with me is that she would
22 testify that there were allegations of healthcare fraud, and
23 that as a result of these allegations, there was an
24 investigation that then focused on Mr. Yelaun.
25         Now, I think that's clearly hearsay.  To the extent

|    |    |
|----|----|
| 1  | that the government is getting up and saying there were |
| 2  | allegations from some unknown, unnamed source of healthcare |
| 3  | fraud and that those allegations -- as a result of those |
| 4  | allegations, the government focused on Mr. Yelaun, I think that |
| 5  | that's hearsay.  I think it's clearly prejudicial because it's |
| 6  | talking about things which are not in evidence. |
| 7  | Now, the government presumably is going to put on |
| 8  | evidence of healthcare fraud or at least what they think is |
| 9  | healthcare fraud.  But to begin their case by talking generally |
| 03:05 10 | about allegations of healthcare fraud focusing on this |
| 11 | defendant, I think is clearly hearsay, and I think it should be |
| 12 | excluded. |
| 13 | THE COURT:  What about that particular point? |
| 14 | MR. WEINREB:  Your Honor, that's a perfectly fair |
| 15 | objection, but if I used the word "allegations" in my |
| 16 | conversation with Mr. Shapiro, it was simply as a proxy for the |
| 17 | idea that there was an investigation into possible healthcare |
| 18 | fraud, not an investigation of specific allegations implying |
| 19 | that -- |
| 03:06 20 | THE COURT:  His point is well-taken, that to the |
| 21 | extent it is -- the jury is led to believe that the reason |
| 22 | we're here is what somebody -- is because somebody else said |
| 23 | something to your witness, then his point is well-taken.  But |
| 24 | if the question is properly posed and the outline of what |
| 25 | you've said is going to be presented, is offered in the |

1   appropriate way, with an appropriate foundation, then I don't
2   see that it's objectionable.
3          I don't know whether Mr. Shapiro will object to the
4   question, but at least as I hear it, so long as there is not
5   this implication of a solicitation of hearsay, there would be
6   no allowed objection that I can foresee.  But, of course, I
7   can't predict exactly what you're going to ask and whether or
8   not Mr. Shapiro will have an appropriate objection to that kind
9   of question.
03:07 10         MR. JONATHAN SHAPIRO:  Well, Judge, even if Mr.
11  Weinreb doesn't use the specific word "allegations," if he's
12  going to say what he just said he's going to have the witness
13  say, which is, there was an investigation into healthcare fraud
14  and that focused on the defendant, I think the implication is
15  clear, that on the basis of evidence, which is not being
16  specified, an investigation of healthcare fraud focused on the
17  defendant.  That's going to give the jury the notion that --
18         THE COURT:  Put it this way, Mr. Weinreb:  If what you
19  ask that first witness is not going to be corroborated by
03:07 20  subsequent evidence, then don't ask it.
21         MR. WEINREB:  Of course, not, your Honor.
22         THE COURT:  If you're informing the Court that
23  whatever you ask is a preliminary to what the government
24  expects and intends to offer by way of evidence, then it's a
25  permissible lead-in summary of what the government is going to

1   do, just as an opening is going to be that.
2           I expect that counsel, in their opening, is not going
3   to make it into a second argument.  It's going to be, I expect
4   the evidence to show that...  And if you can't say that before
5   everything that you say in your opening, then you shouldn't say
6   it.
7           MR. WEINREB:  Certainly, your Honor.  I believe this
8   second comment is not well-taken, that there was an
9   investigation that focused on Mr. Yelaun.  Well, obviously,
03:08 10 there was.  Mr. Yelaun is standing here, indicted, with
11  multiple counts of healthcare-fraud-related crimes.
12          I really do believe that the question I intend to ask
13  and the answer I intend to elicit will seem innocuous even to
14  Mr. Shapiro when the time comes.  I appreciate the Court's
15  guidance, but I'd ask permission to simply ask the questions.
16  There can be objections and the Court will rule.
17          THE COURT:  That's the way it's going to proceed
18  unless there's something else that's anticipated that I don't
19  foresee.  Mr. Shapiro, is there?
03:09 20        MR. JONATHAN SHAPIRO:  No.  Just to respond, however,
21  yes, he's been indicted, but the Court is going to instruct the
22  jury that an indictment is not evidence.  Yet, he wants to put
23  on, through a witness who will be providing evidence, what is
24  in the indictment.  And that's not evidence.  So --
25          THE COURT:  I think this is the kind of thing that

1   we'll wait for the question itself.  And if there is an
2   objection that's well-taken, Mr. Shapiro, it will be sustained.
3   If I believe it's not, then I will overrule it.  Okay?
4   Anything else in that regard?
5           MR. WEINREB:  Not in that regard, although there are
6   two other issues.
7           THE COURT:  Go ahead.
8           MR. WEINREB:  The government intends to introduce into
9   evidence the Articles of Organization of approximately nine
03:09 10   different companies that the defendant was involved in.  These
11   are public certified records, and I have not heard that there
12   will be any objection to their admissibility.  I have heard
13   that there will be an objection to the relevance of four of
14   them.  These are physical therapy or other related companies
15   that Mr. Yelaun was connected to, specifically was an officer
16   of, around the same time that these -- that the events in this
17   case occurred.
18           Mr. Shapiro has told me he objects on the grounds that
19   none of those four companies are implicated in any of the
03:10 20   allegations of fraud in the indictment, which is true.
21   However, I believe that the -- the evidence of his involvement
22   in those corporations is relevant for two separate reasons.
23   First of all, one of the issues in this case is going to be
24   whether Mr. Yelaun knew about the fraud, could understand the
25   way the fraud occurred, and whether, indeed, he was the --

1    essentially like the mastermind of the fraud, whether he was
2    the person who, it is fair for the jury to conclude, created
3    the fraudulent scheme.
4        And to that end, it's relevant for the jury to know
5    that he was a businessman.  He was a young man at the time.  He
6    was only in his early 20s, and, yet, he was already the officer
7    or director of nine separate Massachusetts corporations.  I
8    believe the jury is entitled to know that simply because they
9    can draw a fair inference of his business acumen, ambition and
03:11 10  the scope of his involvement in the physical therapy business.
11        It's also relevant for a second reason, which is that
12   various of the witnesses who will testify, who worked for Mr.
13   Yelaun, worked for him at these various entities.  And the jury
14   is going to be hearing about them out of the mouths of witness
15   because the witnesses are going to be asked, How did you meet
16   Mr. Yelaun?  Did you do business with him?  Where did you do
17   business with them?  How did that come about?  They're going to
18   be mentioning the names of all of these different corporations.
19   If the jury has not been introduced to these corporations ahead
03:12 20  of time, it's just going to be baffling to them what all
21   these --
22        THE COURT:  All right.  Mr. Shapiro.
23        MR. JONATHAN SHAPIRO:  Well, according to the chart
24   that the government wishes to introduce, there are -- and we
25   agree -- at least one, two, three, four, five -- six relevant

1   corporations that are relevant to the fraudulent allegations in
2   this case.  Their offices are offices that various witnesses
3   went to and so on.  So we don't object to that.
4         But there are four corporations that had offices in
5   Dedham, in Brighton, in Worcester and Allston, which I suggest
6   have nothing to do with this case.  And to the extent that the
7   government is going to be putting in Articles of Incorporation
8   or corporate documents relating to these separate and, I say,
9   irrelevant corporations, I object.
03:13 10        Now, it may be that witnesses will at one time or
11  another refer to some of these other businesses where they
12  went, but the fact that the article --
13        THE COURT:  Was your client an officer or a director
14  of these other four corporations at the same time, at the
15  relevant times?
16        MR. JONATHAN SHAPIRO:  Well, some are overlapping
17  periods of time.  Some are not.  Some are -- I suggest that
18  some were not even in business during the time of this alleged
19  fraud.
03:14 20        So I just -- my objection is mainly one of relevance,
21  that these corporate documents are simply irrelevant.  They
22  don't assist the government one bit in proving its case.  And
23  it's just going to clutter the record with irrelevant and, I'd
24  suggest, prejudicial information.
25        THE COURT:  Well, what I've heard thus far -- of

1    course, I haven't seen the documents -- it does sound to me
2    like the information that the government is expecting to offer
3    is relevant.  If it turns out that they offer something that is
4    irrelevant, then I will at a later time entertain a motion to
5    strike it.  But as for now, at least it sounds to me like it's
6    relevant.
7         And I caution the government that to the extent that
8    they offer evidence or documentation that turns out to be
9    totally irrelevant, then I will allow a motion to strike, and
10   I'll instruct the jury not to consider such evidence.  But I
11   take it the government understands that and will act
12   accordingly.  Anything else?
13        MR. WEINREB:  Yes, your Honor.  There was another
14   issue.  The government is going to call to the witness stand
15   two individuals who signed plea and cooperation agreements:
16   Doctor Chatterjee and Doctor Montoni.  I anticipate that they
17   will be impeached based on those agreements with the
18   government, and I believe under well-established First Circuit
19   law the government is entitled under that circumstance to
20   anticipate the impeachment and try to remove the sting of it by
21   eliciting the fact of the agreement and the terms -- the
22   defendants' understanding of the agreement ahead of time.
23        As part of that, the government intends to introduce
24   the plea agreements into evidence.  And I, again, believe that
25   there are First Circuit cases -- and including ones very

1    recent, like from last year -- that specifically hold that
2    those documents should go before the jury in their entirety so
3    that the jury is in a position to evaluate for itself exactly
4    what the defendants' motives to lie or to tell the truth might
5    be.
6         THE COURT:  You mean the witnesses?
7         MR. WEINREB:  I'm sorry.  I keep misstating.  The
8    witness, what the witnesses' motive to curry favor with the
9    government and to tell the truth might be.
03:16 10        I understand that Mr. Shapiro had an objection to some
11   portions of the documents going into evidence.
12        THE COURT:  I'll hear him in that regard.
13        MR. JONATHAN SHAPIRO:  Yes.  The portions of the plea
14   agreements to which the defendant objects are those portions
15   which I suggest are essentially vouching for the witness by --
16   on the basis of the provisions in the plea agreement where the
17   witness -- or where the government requires the witness to tell
18   the truth and makes the plea agreement conditional upon the
19   witness telling the truth.  And there's a fair amount of
03:17 20   language which -- in the plea agreement which tends to, as I
21   suggest, vouch for the witness by the government.  And I think
22   it's inappropriate for that kind of statement to be in the plea
23   agreement.  I mean, it's one thing --
24        THE COURT:  I'm not sure if I've ever had a case in my
25   14 years where a plea agreement was objected to.  But perhaps

```
 1    you can enlighten me, Mr. Shapiro, and give me some case law
 2    where a plea agreement was either excluded or redacted on the
 3    basis of an objection by the defendant, a plea agreement of a
 4    witness.  I'm unaware of it ever having been done in my
 5    courtroom, and I would be inclined, unless otherwise educated,
 6    to allow a plea agreement to be introduced but, of course,
 7    subject to thorough cross-examination by defense counsel on the
 8    implications of the plea agreement and the fact that if the
 9    witness doesn't give the testimony that the United States
10    Attorney's Office believes is substantial and of assistance to
11    it that it will not make a 5K1 recommendation and so on.
12            I've heard many cross-examinations that have made use
13    of those portions of the plea agreement, but I've never been
14    confronted with a motion or an effort to redact it.  So maybe
15    overnight you can find me some precedent, I'll be glad to
16    consider it.  But I would be disinclined to parse out a plea
17    agreement.  I would be more inclined to let it in and let you
18    cross-examine the witness on all of the ramifications of it.
19            MR. JONATHAN SHAPIRO:  I don't expect that this is
20    going to be an issue for the next couple of days anyway, and I
21    will --
22            THE COURT:  All right.  Good enough.  I'll reserve my
23    ruling until you get me something.
24            MR. JONATHAN SHAPIRO:  Okay.
25            THE COURT:  Anything else, Mr. Weinreb?
```

1      MR. WEINREB:  No further issues that I'm aware of.
2      THE COURT:  Any from your side, Mr. Shapiro?
3      MR. JONATHAN SHAPIRO:  Not at this point, your Honor.
4      THE COURT:  Then we'll be back here at 9 a.m.  As I
5 recall, the openings are going to be not more than 20 minutes
6 apiece, is that right?
7      MR. GREGG SHAPIRO:  I may go a couple minutes over,
8 but it will very close to 20 minutes.
9      THE COURT:  That's fine, as long as it doesn't go too
03:19 10 much beyond that.
11      Again, if you're going to make your presentation from
12 the well, understand my rules about not wandering.  But you can
13 use the podium if you like.  Anything else, Mr. Shapiro?
14      MR. JONATHAN SHAPIRO:  Nothing further.
15      MR. WEINREB:  Just one question.  Will we have access
16 to the courtroom to set up the screen?
17      THE COURT:  Mr. Nicewicz will make that available to
18 you.
19      MR. WEINREB:  Thank you, your Honor.
03:20 20 (Whereupon, at 3:20 p.m. the trial recessed.)
21
22
23
24
25

1       C E R T I F I C A T E

2

3

4       I, Cheryl Dahlstrom, RMR, and Official Reporter of the

5   United States District Court, do hereby certify that the

6   foregoing transcript excerpt, from Page 1 to Page 15,

7   constitutes, to the best of my skill and ability, a true and

8   accurate transcription of my stenotype notes taken in the

9   matter of Criminal Action No. 05-10010, United States of

10  America vs. Severin Yelaun.

11

12

13

14

15

16                          /s/ Cheryl Dahlstrom

17                          Cheryl Dahlstrom, RMR

18                          Official Court Reporter

19

20

21

22

23

24

25