1

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA            )
                                         )
5                                        )
                                         )
6    vs.                                 )  CR No. 05-10010-NMG
                                         )
7                                        )
     SEVERIN YELAUN                      )
8

9

     BEFORE:   THE HONORABLE NATHANIEL M. GORTON
10

11

                         JURY CHARGE CONFERENCE
12

13

14

              John Joseph Moakley United States Courthouse
15                       Courtroom No. 4
                         One Courthouse Way
16                       Boston, MA 02210
                         Thursday, December 14, 2006
17                       2:20 P.M.

18

19

20                       Cheryl Dahlstrom, RMR
                         Official Court Reporter
21            John Joseph Moakley United States Courthouse
                   One Courthouse Way, Room 3209
22                       Boston, MA 02210
                 Mechanical Steno - Transcript by Computer
23

24

25

1    APPEARANCES:

2          OFFICE OF THE UNITED STATES ATTORNEY
           By:  William D. Weinreb, AUSA, and
3               Gregg D. Shapiro, AUSA
           1 Courthouse Way
4          Boston, Massachusetts 02210
           On behalf of the Government.

5
           STERN, SHAPIRO, WEISSBERG & GARIN
6          By:  Jonathan Shapiro, Esq., and
                Jeffrey Weisner, Esq.
7          90 Canal Street
           Boston, Massachusetts 02114-2022
8          On behalf of the Defendant.

9

12:11 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Good morning, counsel -- actually, good

3      afternoon.

4           We are here to discuss the charge to the jury.  Before

5      we get to the proposed jury instructions of both the government

6      and the defendant, I do want to render a decision on the

7      Exhibit A that was discussed yesterday.

8           With respect to the admissibility of that document,

9      Exhibit A, Probation's offense conduct memorandum for Doctor

12:25  10    Ranendra Chatterjee, the Court finds that the report and its

11     attachments are not admissible.  Rule 608(b), that is, Federal

12     Rule of Evidence 608(b), makes clear that for proposes of

13     attacking a witness' character or truthfulness, specific

14     instances of conduct of a witness may be inquired into on

15     cross-examination, as was done here, but may not be proved by

16     extrinsic evidence.  So I'm not going to allow Exhibit A to be

17     admitted.

18          There was an additional matter which apparently

19     counsel have taken care of.  We noticed that in the indictment

12:26  20    Count 42 charged the defendant with conspiracy to commit mail

21     fraud, wire fraud and healthcare fraud.  And, of course, the

22     substantive wire fraud charges have been dismissed.  And,

23     therefore, the Court will simply refer to that count as being

24     one of conspiracy to commit mail fraud and healthcare fraud and

25     eliminate any mention of wire fraud.

1          Turning to -- well, my deputy will pass out a draft

2     verdict form that I've done, utilizing the information that was

3     given to me in the government's and my own prior verdict form

4     that I had drafted earlier.  Basically, what I've done with the

5     government's is abbreviate and shorten so that instead of three

6     and a half pages, it's down to two something.  It simply refers

7     to each of the counts by a short reference to what it involves.

8     And I will hear counsel before we adjourn today with respect to

9     that proposed verdict form.

12:27  10          Turning next to the government's proposed jury

11     instructions, I'm going to go through the instructions and tell

12     you whether I am proposing to give the substance of each of

13     these instructions and, yet, I do emphasize the word

14     "substance."  In most cases, I'm not going to give these

15     charges verbatim and, also, in most cases, my charge deals with

16     each subject in a more succinct way, I might put it.  I

17     understand that parties want to give me alternatives, and I

18     appreciate that, but when I say I'm going to give the substance

19     of a particular proposed request, it means that.  It means the

12:28  20     substance and not verbatim.

21          Therefore, starting through the government's proposed

22     jury instructions, I will give the substance of what is

23     requested on Page 1, that is, consider only this defendant.  It

24     won't be three or four sentences, but I will add at an

25     appropriate place that, of course, we are only dealing here

1    with this defendant and not anybody else who was mentioned

2    and/or was involved in this case.

3              I will give the substance of the requests on Pages 2

4    and 3 and 5.  These are mostly boilerplate matters.  6.  With

5    respect to the request on 7, refresh my memory.  Was there only

6    one chart used during the course of the trial?  And was it

7    marked as an exhibit or is it a chalk?

8              MR. WEINREB:  No, your Honor.  There actually was only

9    one chart based on evidence.  It was marked as an exhibit and

12:29 10    admitted.

11              THE COURT:  What is its exhibit number?

12              MR. WEINREB:  Yes.  I think it's Exhibit 1.

13              MR. GREGG SHAPIRO:  No.  It's Exhibit 12.

14              MR. WEINREB:  That's right.  It's Exhibit 12.  It's

15    basically a summary of what was in 1 through 11.  It was this

16    right here.

17              THE COURT:  That's the only chart?

18              MR. WEINREB:  That's the only chart.  There are other

19    diagrams that were also admitted into evidence and they're sort

12:30 20    of maps.  They weren't based on any evidence.  They're just

21    diagrams.

22              THE COURT:  I may change this to singular, a chart,

23    containing information, but I basically give the substance of

24    that.

25              MR. WEINREB:  Yes, okay.

1       THE COURT:  And then going on, I give the substance of

2   the requests starting on Pages -- on Page 8 and then the major

3   request of mail fraud on Page 9.  But I do not make specific

4   reference to our facts.  In other words, where you're

5   requesting in that first element the defendant voluntarily and

6   intentionally devised or participated in a scheme to defraud

7   automobile insurance companies out of money by causing bills to

8   be sent, I don't say that.  I give the elements in neutral

9   form, not with reference to specific facts in this case.  But,

12:31 10   still, the substance is there.

11       Now, I don't give the substance of much of the

12   material on Page 10, starting about a third of the way down,

13   where the government asks me to instruct particularly that it

14   is not required to prove that anyone actually relied upon the

15   particular false statement; and in the next paragraph, about

16   it's not necessary to prove that the defendant instigated or

17   devised or was the primary wrongdoer; or in the next paragraph

18   that talks about while proof of a financial interest in the

19   outcome of the scheme is not essentially, et cetera.

12:31 20       I don't give the substance of those paragraphs, nor,

21   turning over to the top of Page 11, do I charge on the role,

22   that is, whether it was a major or minor role.  I give the --

23   what I believe to be the model instruction on the First

24   Circuit, but it does not -- that model instruction does not

25   particularly highlight any of those four parts of that first

1    element.

2         I do give the substance of the second element and of

3    the third element, but, again, on the bottom of Page 12 where

4    you're talking about exact dates, I don't give it here, but I

5    do elsewhere in my charge talk about on or about dates and not

6    being necessary to prove exact dates.  It's not included in

7    this part, but it is in other parts.

8         Then at the very bottom of Page 12, I do not say

9    specifically that the mailed matter need not contain a

12:32 10   fraudulent representation or purpose or request for money.  I

11   do, however, give the substance of the rest of that last

12   paragraph.  And I think, therefore, I cover the substance of

13   what you're getting at.

14        Then turning over to the healthcare fraud requests,

15   starting on Page 14, I give the substance of that.  But in the

16   middle of Page 15, again, I do not have a specific instruction

17   about whether anyone actually relied upon any particular false

18   statement or representation or concealment.  That's not

19   included in the model instruction and I don't either.  But I do

12:33 20   give the substance of that request.

21        Turning again, then, to the conspiracy requests,

22   starting on Page 17, I give the substance of that entire

23   request with perhaps at least an exception on Page 17.  I don't

24   talk about what Congress deemed appropriate.  That paragraph

25   toward the bottom of Page 17, I do not give.  But going on, I

1    give the substance of everything up through Page 20.

2         Turning to Page 21, I give the substance about

3    knowledge of unlawful purpose but in a much shorter version

4    than that whole page, 21.  Mine is about a sentence or maybe

5    two.

6         Then turning over to Page 22, I, again, do not give

7    the instruction that requests about the defendant's

8    participation, that is, whether it was a major role or a minor

9    role.  I do not so instruct.  And then on Page -- the bottom of

12:34 10  Page 23, I do, of course, instruct on overt -- on the overt act

11   but it's shorter than that request.  It's more along the lines

12   of the defendant's suggestion in his request.

13        But I give the substance of the rest of that

14   conspiracy request, excluding the last paragraph on Page 25.  I

15   don't talk about the conspiracy time period, 1998 to 2005 or

16   1999 to 2002.  I do not give specific reference to the facts in

17   this case.

18        Then with respect to the request on the top of Page --

19   rather, on Page 26, conspiracy to commit money laundering, I do

12:35 20  so instruct, but I don't go through the verbatim repetition of

21   conspiracy the second time.  I state that the same elements

22   apply as were instructed with respect to the mail fraud and

23   healthcare fraud, but I don't go through it all a second time.

24   But I do get into the elements of money laundering after I

25   suggest that -- after I state that there is a count on

9

1    conspiracy to commit money laundering, I say, in order to know

2    what that is, you have to know the elements of money

3    laundering.  And then I go into that and basically give the

4    substance of what's requested.

5         However, turning over to Page 28, in the middle there,

6    I do not instruct about a person conducts a financial

7    transaction if he begins it.  I don't give that one, nor the

8    next paragraph about affecting interstate commerce.  I do give

9    the substance of the last paragraph about specified unlawful

12:36 10   activity.  Basically, I give the substance of that.

11        And then I do give the substance of the instruction on

12   Page 30 and 31, although I think there's something missing

13   here.  Four lines up from the bottom on Page 31, you say, "You

14   may use the to read" -- there's a word missing there somehow.

15   I don't know what it is.

16        MR. WEINREB:  It should be "the indictment," your

17   Honor.

18        THE COURT:  "You may use the indictment," I see, to

19   read the crimes.  Well, I give the substance of that, in any

12:37 20   event, and the substance of the foreperson's role at the very

21   end.

22        So with respect to the Court's rulings on the

23   government's proposed jury instructions, I'll hear first from

24   the government.  Mr. Weinreb.

25        MR. WEINREB:  Your Honor, just a couple of things, not

1    necessarily in the same order the Court addressed them.  With

2    the money laundering instruction --

3            THE COURT:  Give me a page if you want me to look at

4    something.

5            MR. WEINREB:  Sorry.  I guess it begins on Page 26,

6    conspiracy to commit money laundering.  Although it's true that

7    the conspiracy elements and instructions are the same with

8    respect to the other conspiracy, there's no overt act

9    requirement.

12:38 10         THE COURT:  Yes, I do point that out.

11           MR. WEINREB:  Very well.

12           THE COURT:  There is that distinction between the

13   conspiracy -- or mail fraud and the conspiracy with the overt

14   act, and I do point that out.

15           MR. WEINREB:  Also, the indictment alleged two

16   possible forms of money laundering.  One was a so-called

17   "promote money laundering," where you -- the money laundering

18   consists of plowing the illegal proceeds back into the

19   business.  And it also charged a "conceal money laundering,"

12:38 20  which is concealing the money.  And we're not going forward on

21   the concealing.  The only object of the conspiracy we're going

22   forward on is the promote.  And the indictment has been

23   redacted appropriately to reflect that.  So I don't know if the

24   Court had intended to instruct on the conceal, but there's no

25   need to.

1          THE COURT:  I don't think I do, but that's -- I will

2     take that into account.

3          MR. WEINREB:  Okay.  Then with respect --

4          THE COURT:  The government has dropped the

5     concealment.

6          MR. WEINREB:  With respect to the mail fraud count --

7          THE COURT:  Starting on page?

8          MR. WEINREB:  I'm finding the page right now.  Page 9.

9     The Court had indicated that for the first element it would be

12:39 10    the more generic kind of statement --

11          THE COURT:  Yes.

12          MR. WEINREB:  -- of the law.  The government has no

13     objection to that.  But neither the way -- the way that it is

14     worded -- and I may have outdated pattern jury instructions

15     here.  But, you know, the Neder case, which was decided after

16     these pattern jury instructions were written, the 1998 version,

17     did hold that material -- the mail fraud -- the mail fraud

18     statute says the mail fraud can be committed in two different

19     ways.  There can be a scheme or artifice to defraud and false

12:40 20    or material statements.  It's an "or," not an "and."  The

21     defendant has it as "and" throughout this.  But in the pattern

22     jury instructions, it's properly "or."  However, the Supreme

23     Court held in Neder that --

24          THE COURT:  Mentor?

25          MR. WEINREB:  Neder, N-E-D-E-R.  Your Honor, I don't

1    know if the Court saw it, but we filed a written objection to

2    the defendant's --

3            THE COURT:  Yes.  We just got it.

4            MR. WEINREB:  Yeah.  That cites the appropriate cases

5    for this proposition.

6            So I would propose that the first element -- to

7    account for Neder properly, that it read as follows:  First,

8    the existence of a scheme -- the existence of a scheme to

9    defraud or to obtain money by means of material, false or

12:41 10  fraudulent pretenses.  In other words, all one sentence,

11   because the material has to -- it's basically a scheme to

12   defraud or a scheme to obtain money by means of material false

13   or fraudulent pretenses.  I believe that's the way that the

14   Supreme Court has read the language.

15           THE COURT:  Wait a minute.  Try that again.

16           MR. WEINREB:  Let me -- it might be more helpful to

17   take the starting point of the pattern jury instruction.  I

18   have the 1988 version here.  I don't know if that's the version

19   the Court has.  It's Page 76.

12:41 20          THE COURT:  I have updated October 4, 2006.  But I

21   don't know whether there have been any changes to it.

22           MR. WEINREB:  Well, I have it as Instruction 4.12.

23           THE COURT:  Mine is 4.18.1341.  And it reads, "For you

24   to find defendant guilty of mail fraud, you must be convinced

25   that the government has proven each of the following things

1  beyond a reasonable doubt:  first, that there was a scheme

2  substantially as charged in the indictment to defraud or to

3  obtain money or property by means of false or fraudulent

4  pretenses."

5          MR. WEINREB:  I think that's fine so long as -- it

6  should say by means of "material" false or fraudulent

7  pretenses.

8          THE COURT:  Means of -- you want to add the word

9  "material" before false?

12:42 10          MR. WEINREB:  Yes.

11          THE COURT:  Well, wait a minute.

12          MR. WEINREB:  And the defendant has --

13          THE COURT:  Wait just a second.

14          MR. WEINREB:  Sure.

15          THE COURT:  All right.  That is the way that my charge

16  reads.

17          MR. WEINREB:  Very well.

18          THE COURT:  I do not have the word "material," but I

19  don't have a problem with adding that word.

12:43 20          MR. WEINREB:  The defense has requested that, and I

21  think they're entitled to that.

22          THE COURT:  Yes.

23          MR. WEINREB:  As for the -- there were portions of the

24  government's proposed charge that the Court said that it

25  doesn't normally give.  We have no objection to that.  I would

1       ask, though, whether the government can mention these things in

2       the closing.  In other words, to say that -- it's particularly

3       important, I think, from our perspective, to emphasize to the

4       jury that so long as these -- what we allege to be fraudulent

5       documents, particularly the EMG reports, were capable of

6       influencing the insurance companies about whether to pay a

7       claim or not pay a claim, then it doesn't matter whether they

8       actually relied on them or even whether they paid the claim in

9       the end, that it's enough that this was the kind of thing that

12:44 10  the insurance companies would take into account in normal

11      circumstances, in other words, that it was capable of

12      influencing them.  That is the definition of materiality, No.

13      1, that the Court intends to use.

14          A representation is material if it has natural

15      tendency to influence or is capable of influencing the decision

16      of a reasonable person in deciding whether to engage or not to

17      engage in a particular transaction.

18          THE COURT:  That comes from where?

19          MR. WEINREB:  That's the pattern jury instruction,

12:44 20  that language.

21          THE COURT:  But you're quoting -- this "material"

22      definition is from the pattern?

23          MR. WEINREB:  Well, the pattern jury instruction just

24      has the first -- has that language that I just quoted.

25          THE COURT:  Yes.

1          MR. WEINREB:  4. --

2          THE COURT:  Where it defines "material"?

3          MR. WEINREB:  Yes.

4          THE COURT:  A material fact or matter is one that has

5    a natural tendency to influence or be capable of influencing

6    the decision of the decision maker to whom it was addressed?

7          MR. WEINREB:  Correct.

8          THE COURT:  Yes, I say that.

9          MR. WEINREB:  What I'm asking is not for the Court to

12:45 10   further instruct but for the government to be permitted to add

11   what the Neder court said that means, which is that the Neder

12   court, in stating -- in affirming that this was the correct

13   definition of materiality, also said that, of course, you don't

14   have to show that the decision maker actually relied on the

15   false document, nor do you have to show that the decision maker

16   suffered any damages.  In other words, we don't have to show

17   that they actually paid the claim.

18          If the insurance company received a fraudulent

19   document and they didn't pay the claim because, let's say, the

12:45 20   PIP coverage had been exhausted, or they didn't pay the claim

21   because they noticed it was a false document, it's still a

22   material misrepresentation under the law.  I just want to be

23   able to point that out to the jury because I have a feeling --

24          THE COURT:  Whatever you point out to the jury, if

25   it's good law, you won't get contradicted.

1          MR. WEINREB:  Very well.

2          THE COURT:  But if it's not good law, you will.

3          MR. WEINREB:  Very well, your Honor.  I'm not -- I'm

4    confident it's good law.  I just didn't want to do something

5    that is against the Court's practice.

6          I believe -- with respect to the Court's rulings on

7    the government's requests that -- the government has no other

8    objections.

9          THE COURT:  Okay.  Then we'll turn to Mr. Shapiro and

12:46 10    then we'll go to his requests.

11          MR. JONATHAN SHAPIRO:  With respect to the instruction

12    on Page 6.

13          THE COURT:  Page 6?

14          MR. JONATHAN SHAPIRO:  Evidence to be viewed as a

15    whole.  Typically --

16          THE COURT:  Well, let me say first, I say that in

17    passing at the very beginning in my boilerplate instructions,

18    that you have to view -- I'm not even sure that I mention

19    "evidence."  I say -- let's see if I can find what I'm

12:47 20    referring to.

21          Go ahead, Mr. Shapiro.

22          MR. JONATHAN SHAPIRO:  I guess my point is, typically,

23    the Court instructs the jury that they can believe all of what

24    a witness testified, none of what a witness or some.

25          THE COURT:  And I say that.

1          MR. JONATHAN SHAPIRO:  Okay.  And this tends to

2     contradict that because it says the jury should not take the

3     testimony of a witness piece by piece and reject those portions

4     which, standing alone -- in other words, at one point you say

5     they can essentially do that, and then this instruction seems

6     to say they shouldn't.

7          THE COURT:  Again, this is something where maybe the

8     word "substance" is overused.  I don't give this particular

9     instruction, and I think -- I appreciate your suggestion, that

12:48 10   I'm not going to zero in the jury on any particular point of

11    evidence.  I'll look at this again and make sure that I go the

12    right way.

13         MR. JONATHAN SHAPIRO:  Then in addition to the

14    portions of the government's instructions which the Court has

15    said it will not give, with which I agree --

16         THE COURT:  Where are you looking at particularly?

17    Which one?

18         MR. JONATHAN SHAPIRO:  No.  I'm agreeing with, up

19    until Page 19 --

12:49 20   THE COURT:  19.

21         MR. JONATHAN SHAPIRO:  -- where I think that for the

22    same reasons I think that the Court didn't --

23         THE COURT:  This is in conspiracy?

24         MR. JONATHAN SHAPIRO:  Yes.  In the middle of the last

25    paragraph where the instruction reads, "Indeed, it would be

1    extraordinary if there were or had been such a formal meeting

2    or document or even specific oral agreement."  It seems to me

3    that's going too much into facts and suggesting what facts

4    could or couldn't prove a conspiracy.  It seems to me that --

5           THE COURT:  I don't say those words specifically.

6           MR. JONATHAN SHAPIRO:  And I would say the same should

7    be true of the first paragraph on the -- on Page 20.

8           THE COURT:  Page 20.  Well, I don't say it that way,

9    but I say something like that, that you don't have to --

12:50 10   obviously, you don't have to prove every detail of the

11   agreement.  It doesn't have to be in writing and so on and so

12   forth.  But I don't say these particular words.

13          MR. JONATHAN SHAPIRO:  Well, my objection is mainly to

14   suggesting that what a conspiracy is often; that is, it's often

15   secret, or what the nature of conspiracy is often, I think that

16   --

17          THE COURT:  Yeah, yeah.  I don't use the word "often,"

18   I believe, but I'll check it.

19          MR. JONATHAN SHAPIRO:  Okay.  And then on the top of

12:50 20   Page 22, I object to -- generally, instructions which say what

21   the jury doesn't have to find.  It's one thing to define what a

22   conspiracy is and what they must find, but then to go on and

23   say, as the government proposes, they need not have known the

24   identity of each and every member, nor need be apprised of all

25   of their activities, need not have been informed as to all the

1    details, et cetera.  Number 1, in this case, you know, I don't

2    even think that's a real, live issue.  But in any case, I do

3    object to that type of instruction as to what they don't have

4    to prove.

5         THE COURT:  I'll look at the top there again.

6         MR. JONATHAN SHAPIRO:  And then, similarly, I think

7    the next sentence -- or the next several sentences, "The extent

8    of a defendant's participation has no bearing on the issue" --

9         THE COURT:  That's one I said I didn't give.  That

12:52 10   paragraph is one that I did not give.

11        MR. JONATHAN SHAPIRO:  And then on Page 28, I wasn't

12   clear --

13        THE COURT:  28.

14        MR. JONATHAN SHAPIRO:  In the paragraph where --

15   dealing with financial transaction --

16        THE COURT:  This is money laundering?

17        MR. JONATHAN SHAPIRO:  Yes, uh-huh.

18        THE COURT:  Well, I give the substance of that first

19   paragraph but not after that.  The second paragraph, starting,

12:53 20   "A person conducts," and then the next one, "affects interstate

21   commerce," those two, I do not give the substance of.

22        MR. JONATHAN SHAPIRO:  I would also object to anything

23   after the second sentence of that first paragraph where the

24   government proposes, "If a person gives a personal check or a

25   business check to another person and that transaction affects

1    interstate commerce, he or she engages in a financial

2    transaction."  Well, that's kind of like the Court saying what

3    the jury has to find with respect to the facts.

4              THE COURT:  I do not believe I say that --

5              MR. JONATHAN SHAPIRO:  Similarly --

6              THE COURT:  -- but I will check that again.

7              MR. JONATHAN SHAPIRO:  Similarly, the next sentence,

8    "If a person deposits a check in the account of the bank which

9    is engaged in interstate commerce, that person engages in a

12:53 10    financial transaction," that's kind of directing a verdict with

11    respect to those elements.

12              THE COURT:  I believe that you're correct, and I think

13    I do not say those things.  But I'll check it.

14              MR. JONATHAN SHAPIRO:  That's --

15              THE COURT:  That's with respect to the government's --

16              MR. JONATHAN SHAPIRO:  Yes.

17              THE COURT:  -- requests?

18              MR. WEINREB:  Your Honor, may I respond to just two of

19    those?

12:54 20              THE COURT:  Yes, you may.

21              MR. WEINREB:  I only disagree with two of them.  The

22    paragraph on conspiracy, which states --

23              THE COURT:  Where are we again, please?

24              MR. WEINREB:  This, I guess, would be on Page -- the

25    very bottom of Page 21, going over to Page 22, "The defendant

1    need not have known the identities of each and every other

2    member, nor need not have been apprised of all their

3    activities."

4         THE COURT:  Yes.

5         MR. WEINREB:  That is directly from the pattern jury

6    instruction, the First Circuit pattern jury instruction for

7    conspiracy.  That is important to the government, but it is not

8    self-evident to the jurors what is and is not required to be a

9    part of the conspiracy.  I think jurors may be confused that if

12:55 10   a defendant doesn't know all the other conspirators --

11        THE COURT:  I believe I do say about not having to

12   know all the other conspirators or even all the details of the

13   conspiracy.  I'm sure I say that.

14        MR. WEINREB:  Very well, as long as something about

15   that is said.

16        As for this -- on Page 28, what we just discussed --

17        THE COURT:  Wait a second.

18        MR. WEINREB:  I'm sorry.

19        THE COURT:  Page 28.

12:55 20   MR. WEINREB:  Yes, the definition of the financial

21   transaction.

22        THE COURT:  Yes.

23        MR. WEINREB:  I think it's important to distinguish

24   between what is a question of law and what is a question of

25   fact, that the -- the transfer of a personal or business check

1  from one person to another person, as a matter of law, is a

2  financial transaction.  There's no question of fact there for

3  the jury to decide.

4          The question is did somebody in this case transfer a

5  check from -- to another person that was, at least in whole or

6  in part, the proceeds of unlawful activity.  That's the fact

7  they'll have to decide did it happen.

8          But I don't think the defense is free to argue, for

9  example, that handing -- that if I take a check that is the

12:56 10  proceeds of unlawful activity and hand it to somebody else,

11  that that's not a financial transaction.  That's just a

12  misstatement of the law.  It is.  It's clear, if you read the

13  statute, that transferring a monetary instrument is a financial

14  transaction.

15          Similarly, it's specifically stated in the statute

16  that depositing something in a bank is a financial transaction.

17  It doesn't mean it's illegal, and you still have to prove that

18  the defendant did it.  The other elements have to be met as

19  well.  But it's not directing a verdict for the defendant.  You

12:56 20  have to prove that he did it.  That's why we --

21          THE COURT:  I'll look at that again.

22          MR. WEINREB:  We put in evidence of it, that there

23  were checks written out to Severin Yelaun, that he signed them

24  on the back, that they appear to have been deposited.  Those

25  are the facts that we proved.  They can believe it or not

1    believe it.  But it is a financial transaction.

2        THE COURT:  Turning then to the defendant's requests,

3    I will, again, please, emphasize that the word "substance" does

4    not mean I give things verbatim.  But I will give the substance

5    of the mail fraud request that starts on Page 1 and goes over

6    to Page 2.  However, I break the first element into two

7    separate elements.  But I do give the substance of that.

8        The first element, I give the substance of that charge

9    on Page 2, going over to Page 3.  But the paragraph starting,

12:58 10    "The material fact or matter is one that has a natural

11    tendency," I do not make a specific application to this case.

12    In other words, I don't say here, "The false or fraudulent

13    pretense must concern a fact," et cetera.  I keep my

14    instructions very much in the abstract.

15        I will give the substance of the second element

16    request, starting there on the middle of page -- I guess it's

17    3.

18        Going over to Page 4, in the middle paragraph there,

19    with respect to good faith, this is a hotly contested issue.

12:58 20    And let me say I do not have a separate instruction on good

21    faith, but I do define "good faith" when I talk about willful

22    conduct.  So to the extent that I mention good faith and make

23    it a part of the element of the crime, I do so where I define

24    "willful conduct."  But I don't have a separate and extensive

25    charge on the matter of good faith.

1    Proceeding over onto Page 5, I do give the substance

2    of the third element.  Again, on Page 6, I compress the

3    elements here, much as suggested by the government, into three

4    elements.  But I certainly give the substance -- the rough

5    substance of what is requested by the defendant.

6    And then turning on to Page 7, I give the substance of

7    the part that talks about "first element, the existence of a

8    scheme," et cetera.  And I give the substance of the second

9    element, starting on Page 8, with the exception that on the

01:00 10    bottom of Page 9, I do not again instruct on intent or

11    knowledge, which I instructed earlier on.  In other words, I

12    don't repeat that instruction again.

13    I do give the substance of the rest of the request, at

14    least the third element of healthcare fraud.  And then with

15    respect to the fourth element, I do not give the request

16    talking about delivery of healthcare benefits.

17    I do give the substance of the conspiracy request.  I,

18    however, note, as has been earlier pointed out, that I make

19    clear that the element in -- the third element here of an overt

01:01 20    act is not required in the conspiracy for money laundering.

21    Other than that, I give the substance of the entire instruction

22    on conspiracy.

23    And going to money laundering, starting on Page 15, I

24    give the substance of that entire charge, all the way

25    through -- I guess through to Page 21.  I give the substance of

1    that money laundering charge, not in as much detail but the

2    substance.

3         Then as I said before, I do not give a specific

4    instruction on the good-faith defense, but I do give the

5    substance, when I define "willfulness," in a much briefer

6    fashion.

7         And that covers the way that I intend to deal with the

8    defendant's requests.  And I'll hear first from the defendant,

9    Mr. Shapiro.

01:02 10        MR. JONATHAN SHAPIRO:  Well, I think, as a practical

11   matter, the only real exclusion from my request is the

12   good-faith defense.  I think it's important.  I think it needs

13   to be emphasized, particularly in the facts of this case, and I

14   would -- I understand that the Court will give -- and tell me

15   if I'm wrong.  As I understand it, you will give good faith or

16   instruct with respect to good faith wherever willfulness is an

17   issue but that you're not going to give the -- a full-blown

18   good-faith defense as requested.

19        THE COURT:  Yes.  I think that's fair to say.

01:03 20        MR. JONATHAN SHAPIRO:  I would just say that I think

21   that that should be given in this case because -- particularly

22   because of the facts of the case and to emphasize the

23   importance of that.

24        THE COURT:  All right.  I hear you.  Mr. Weinreb.

25        MR. WEINREB:  Your Honor, starting with Page 2 --

1          THE COURT:  Page 2.

2          MR. WEINREB:  -- of the defendant's requests, the

3   third element of mail fraud, "that defendant used the United

4   States mail" --

5          THE COURT:  Yes.

6          MR. WEINREB:  -- that, I believe, is a misstatement of

7   the law.  The pattern jury instructions state "the use of the

8   United States mail," which is different.  This implies that the

9   defendant has to personally use it.  That's clearly not the

01:04 10  law.

11          THE COURT:  "That the United States mail was used on

12   or about the date alleged in furtherance of the scheme," that's

13   the way I say it.

14          MR. WEINREB:  That's correct, your Honor.

15          Similarly, on Page 4 -- I'm sorry, on Page 5, the

16   definition of the third element --

17          THE COURT:  Yes.

18          MR. WEINREB:  -- it says -- the first sentence is

19   fine, that there was a use of the United States mail, but that

01:04 20  "in that Severin Yelaun either received something in the mail

21   or caused something to be mailed in an attempt to execute or

22   carry out the scheme," that's simply not a correct statement of

23   the law.

24          THE COURT:  Yeah.  I don't think I say that.

25          MR. WEINREB:  In fact, there --

1          THE COURT:  Excuse me?

2          MR. WEINREB:  There are cases that state point blank

3    the defendant does not personally have to send or receive

4    anything in the mail.  We can give you those cites.

5          THE COURT:  Let me just see.

6          Yeah.  I say in that regard, "The mailing does not

7    itself have to be essential to the scheme, but it must have

8    been made to carry it out.  There is no requirement of proving

9    that Mr. Yelaun himself was responsible for the mailing, that

01:05 10    the mailing itself was fraudulent or that the use of the mail

11    was intended as the specific or exclusive means of

12    accomplishing the alleged fraud.  But the government must prove

13    beyond a reasonable doubt that Mr. Yelaun knew or could

14    reasonably have foreseen that use of the mail would follow in

15    the course of the scheme."

16          MR. WEINREB:  That's perfectly agreeable to the

17    government.

18          On Pages 8 and 9 of the defendant's request --

19          THE COURT:  8 and 9?

01:06 20          MR. WEINREB:  8 and 9.  It may not be necessary to

21    make this objection since the Court has stated that it will be

22    giving only the substance of these.  But on the second element,

23    where the definitions of "knowingly" and "willful" and "intent

24    to defraud" are stated, these are kind of selective excerpts

25    from the pattern jury instructions that stress parts that are

1    helpful to the defendant but not the corresponding parts that

2    are stated to balance it so that it's fair to both sides.  So I

3    would object to those being given in this language at all and

4    ask that the Court use the pattern jury instructions that were

5    drafted to be fair to both sides.

6            THE COURT:  Okay.  That's basically what I do.  Okay.

7            MR. WEINREB:  On Page 12, which is the defendant's

8    proposed definition of the first element of conspiracy, it

9    says, "The first element the government must prove beyond a

01:07 10  reasonable doubt is the existence of a conspiracy to commit the

11   crimes of healthcare fraud and mail fraud."  That's not

12   correct.  It's healthcare fraud "or" mail fraud.  The

13   government always charges in the conjunctive, but it does not

14   have to prove in the conjunctive.  And so I believe it would be

15   more appropriate to say "commit the crimes of healthcare fraud

16   and/or mail fraud" or, alternatively, "healthcare fraud, mail

17   fraud or both."

18           It is true that the jury -- actually, it's unclear, I

19   think, in this circuit and others, whether the jury must be

01:08 20  unanimous about which object of the conspiracy the defendant

21   conspired to commit.  We're willing to concede that it has to

22   be unanimous.  In other words, they have to be unanimous that

23   it was healthcare fraud, that it was mail fraud or both.  And

24   we've included an instruction to that regard.  But they don't

25   have to find both.

1          Same thing under the second element, the defendant has

2     "and" where it should be --

3          THE COURT:  Where is that?

4          MR. WEINREB:  That would be the fourth line of the

5     defendant's proposed second element.

6          THE COURT:  Yes.  You're saying it should be "or,"

7     "and/or."

8          MR. WEINREB:  "And/or."

9          THE COURT:  I think that's the way I have it.

01:09 10          MR. WEINREB:  Then on Page 13, the first full

11     paragraph --

12          THE COURT:  Yes.

13          MR. WEINREB:  -- the fourth line down of that first

14     full paragraph, "...reasonable or not, that one or both of the

15     underlying crimes be committed."

16          THE COURT:  Okay.

17          MR. WEINREB:  Page 17, the defendant is going through

18     the elements of, at this point, substantive money laundering.

19     The second element is stated incorrectly.  The government does

01:09 20     not have to prove that the defendant knew that the transaction

21     involved funds that were the proceeds of healthcare fraud and

22     mail fraud, only that they were the proceeds of some unlawful

23     activity.

24          THE COURT:  All right.  I'll look at that.

25          MR. WEINREB:  The third element, "that the funds

1    involved were, in fact, the proceeds of healthcare fraud and

2    mail fraud," that's partly true and partly false.  They do have

3    to be the proceeds of one or the other of those or both but not

4    necessarily both.

5            THE COURT:  So it's an and/or?

6            MR. WEINREB:  It's an and/or.

7            And, again, in the fourth element, as it's stated

8    there, "that the defendant engaged in the financial transaction

9    with the intent to promote the carrying on of healthcare fraud

01:10 10    and/or mail fraud," and the rest of it should be struck because

11    we're not proceeding on a conceal-and-disguise theory.

12            THE COURT:  Okay.

13            MR. WEINREB:  And then again on Page 17, towards the

14    bottom, the last paragraph, "to act knowingly," that, again, is

15    simply selectively excerpt portions of the pattern jury

16    instructions that are helpful for the defendant.

17            THE COURT:  Well, okay.

18            MR. WEINREB:  And then on Page -- the bottom of Page

19    18, I don't know if the Court intended to give this at all, but

01:11 20    we would object to these quotes from the Seventh Circuit

21    opinions.

22            THE COURT:  I'm not -- I don't quote opinions.

23            MR. WEINREB:  And, again, the last paragraph there,

24    "The government has alleged that Severin Yelaun conspired with

25    another to commit" --

1          THE COURT:  Wait a minute.  I'm not with you.

2          MR. WEINREB:  I'm sorry, Page 19, right above where --

3          THE COURT:  Let me just write this down.  Page 19.

4  Are you with me now?

5          MR. WEINREB:  The first full paragraph, "The

6  government has alleged" --

7          THE COURT:  Yes.

8          MR. WEINREB:  We object to that paragraph.  The Court

9  will be -- I don't think we need to instruct the jury on what

01:12 10  he's not charged with.

11          THE COURT:  Yeah.  I don't give that.

12          MR. WEINREB:  The beginning of the second element, I

13  don't believe -- I believe that is -- that up until the word

14  "willfully" in the third sentence, that's correct.  "The

15  defendant participated in the conspiracy willfully," but there

16  should be a period there, not, "That is, with the intent to

17  disobey the law and commit the crime of money laundering."

18  That's not an appropriate definition of "willfully."  The Court

19  -- the sentence that begins after that is correct, "To act

01:12 20  willfully means," and it's the generic definition of

21  "willfully."

22          And then on Page 20, the first full paragraph, "The

23  government must prove two types of intent," that's just --

24          THE COURT:  Well.

25          MR. WEINREB:  -- repetitive, I believe.

1          THE COURT:  What do you mean "repetitive"?  That is
2     true.
3          MR. WEINREB:  That is true, but the Court has already
4     said --
5          THE COURT:  I don't say things twice.  When I say I'm
6     giving the substance of it --
7          MR. WEINREB:  Right.
8          THE COURT:  If you ask for it three times, I give it
9     once.  I say I'm giving the substance of your three requests.
01:13 10          MR. WEINREB:  Very well, your Honor.
11          THE COURT:  And I don't give it more than once,
12     usually.
13          MR. WEINREB:  Okay.  The Court -- the government
14     agrees with the remainder of the Court's rulings on these.
15          THE COURT:  Okay.  Have you had a chance to look at
16     the verdict form?
17          MR. WEINREB:  Yes, your Honor.  There are a couple of
18     references that appear to be typos.
19          THE COURT:  Well, we did this hastily, so we expect
01:14 20     there will be a few typos.  But we'll take your pointing them
21     out.
22          MR. WEINREB:  Very well.  The ones we've caught, Count
23     3 on Page 1, it says the letter -- that should be Shtyrkov,
24     S-H-T.
25          THE COURT:  Yes.

```
 1              MR. WEINREB:  Then the exhibit was Exhibit 34 --

 2              THE COURT:  34?

 3              MR. WEINREB:  -- as opposed to 33.

 4              THE COURT:  Okay.

 5              MR. WEINREB:  The next one, Count 4, we believe the

 6      exhibit is 44H.

 7              THE COURT:  Rather than 44G?

 8              MR. WEINREB:  That's correct, your Honor.

 9              THE COURT:  Okay.

01:14 10        MR. WEINREB:  Count 10, on the next page, Page 2 --

 11             THE COURT:  Yes.

 12             MR. WEINREB:  -- the letter was dated March 20, 2001.

 13             THE COURT:  Not February?

 14             MR. WEINREB:  Correct.  Count 11, it says, "Payment Re

 15     Grullon claim," we'd ask that it be "Grullon EMG claim."

 16             THE COURT:  "EMG claim."

 17             MR. WEINREB:  Count 12, again, we'd ask that it be

 18     "EMG claim."

 19             THE COURT:  Okay.

01:15 20        MR. WEINREB:  Again, Count 13, same thing, "EMG

 21     claim."

 22             THE COURT:  Yes.

 23             MR. WEINREB:  Count 14, "EMG claim."

 24             THE COURT:  Yes.

 25             MR. WEINREB:  Count 17, Batia is spelled with only one
```

1  "T."

2           THE COURT:  Okay.

3           MR. WEINREB:  Count 21, Gonzalez has an extra "A" in

4  it on the bottom line.

5           THE COURT:  Yes, it does.

6           MR. WEINREB:  And the exhibit we believe is 38F, not

7  21F.

8           THE COURT:  38F?

9           MR. WEINREB:  38F.  Count 24, on the second line, the

01:15 10  word "to" is capitalized.

11           THE COURT:  Yes.

12           MR. WEINREB:  On the next page, Count 31, we believe

13  the exhibits are 50G and H as opposed to F and H.

14           THE COURT:  Yes.

15           MR. WEINREB:  Count 32, just the bottom line, "Gelfand

16  EMG claim," there should be a space between the close paren and

17  EMG.

18           THE COURT:  I'm sorry.

19           MR. WEINREB:  Count -- it's really not important.

01:16 20           THE COURT:  Actually, maybe the Gelfand should just be

21  out of it.

22           MR. WEINREB:  Her married name is Leyfer, but I

23  believe on the document -- her married name is Gelfand, and

24  that's how she was introduced to the jury.  But the claim is

25  Leyfer because it was her maiden name.

1          THE COURT:  Does it matter whether the "Gelfand" is in

2     there?

3          MR. WEINREB:  I think it would help.  They may be

4     confused as to who this is.  We prefer that it remain.

5          Count 36, Marmolejos, the "E" and the "O" have been

6     transposed.  It's M-A-R-M-O-L-E-J-O-S.

7          THE COURT:  Okay.

8          MR. WEINREB:  The same thing appears to have happened

9     in Count 37.

01:17 10          THE COURT:  Okay.

11          MR. WEINREB:  And then, finally, Count -- on Page 4,

12     what's put as "3," which is Count 42, on the charge of

13     conspiracy to commit mail fraud and healthcare fraud, that is

14     the way it's charged in the indictment.  I'm not sure whether

15     the Court deems it more important to just track the indictment

16     and have it as an "and" or an "and/or."

17          THE COURT:  Well, I do instruct that "and" means

18     "or" --

19          MR. WEINREB:  Very well.

01:17 20          THE COURT:  -- in the course of my instructions.  So

21     this is the way the indictment reads.  I think it has to stay

22     that way.

23          MR. WEINREB:  If there's an instruction about it,

24     that's fine.

25          No other --

1          THE COURT:  All right.  Mr. Shapiro.

2          MR. JONATHAN SHAPIRO:  The only thing I think should

3     be reflected in the verdict form is that, with respect to the

4     conspiracy to commit mail fraud and/or healthcare fraud, the

5     jury is going to be instructed that they have to be unanimous

6     with respect to each alleged conspiracy or in each goal of the

7     alleged conspiracy.  And I think that the verdict form should

8     reflect that, that is, conspiracy to commit mail fraud and

9     conspiracy to commit healthcare fraud, so that that would be

01:18 10    reflected on the verdict form -- or should be reflected on the

11    verdict form.

12          THE COURT:  How would you propose to do that, have two

13    subquestions or --

14          MR. JONATHAN SHAPIRO:  Yeah.  On the charge of the

15    conspiracy to commit mail fraud and healthcare fraud, one,

16    conspiracy to commit mall fraud, guilty, not guilty; conspiracy

17    to commit healthcare fraud, guilty, not guilty.

18          THE COURT:  Does the government object to that?

19          MR. WEINREB:  Yes, I do, your Honor.  I think that's

01:19 20    confusing.  There's no need for that.  And if the Court

21    instructs that the jury has to be unanimous as to which one,

22    there's no need for special interrogatories about which object

23    they picked, if one or other or both.

24          Furthermore, I think that writing it that way implies

25    that there are two conspiracy charges when there's really only

1    one, and that is -- that's just -- this verdict form is

2    confusing enough in the sense that it's multicount and some are

3    grouped and there are different ways.

4         I would be loth to add yet another element of

5    confusion to it when the law doesn't require it, particularly

6    since it's not even clear that they need to be unanimous.  But

7    as long as the Court is going to instruct that they need to be,

8    I would think that that should be sufficient.

9         THE COURT:  Is it clear that healthcare is two words

01:20 10   or one?

11         MR. WEINREB:  Your Honor, I don't practice in the

12   healthcare fraud section but my colleague does, and he tells me

13   that that's an ongoing debate apparently among people who

14   practice in this area.

15         THE COURT:  So we don't know whether to use it as one

16   word or two, but we ought to be consistent.

17         MR. WEINREB:  I think the jury is used to seeing it as

18   two words.  I'm not sure what would be accomplished by making

19   it one word.

01:20 20        THE COURT:  All right.  Did you wish to respond, Mr.

21   Shapiro?

22         MR. JONATHAN SHAPIRO:  No.  But I -- other than to say

23   that I think that given the Court's instruction with respect to

24   unanimity -- and I'm not whetted to having it the way I

25   suggested, but I do think that there should be an indication on

1    the verdict form where they reflect that they have reached

2    unanimity with respect to each of the alleged objects if they

3    have.

4              THE COURT:  Well, the Court certainly instructs that

5    unanimity on the particular fraud is necessary.  And I don't

6    include, of course, everything that I include in my charge in

7    the verdict form, or it would be 20 pages long instead of four.

8    But I will think about whether or not I think it appropriate to

9    separate that out in this case.

01:21 10          I tend to agree with the government that it causes

11   more confusion than it will help.  So I'm inclined not to

12   separate it out but to make it clear that unanimity is required

13   in the course of the charge.  So that's the way I'm leaning

14   now, but I'll look at it again.

15             Anything else that needs to come to our attention at

16   this stage?

17             MR. WEINREB:  Excuse me, your Honor.

18             No, your Honor.

19             THE COURT:  Mr. Shapiro.

01:22 20          MR. JONATHAN SHAPIRO:  There are a couple matters.  We

21   have filed -- and I'm not sure that you've gotten it all.  But

22   I did file a motion for a judgment of acquittal at the close of

23   the government's case and another one at the close of all the

24   evidence.

25             Yesterday, when we rested, I didn't make the motion.

1    I'd like the motion to be deemed having been filed at the close

2    of the government's case.  Since there wasn't any defendant's

3    case, I'm not sure it makes any difference, but for the record,

4    I'd like --

5        THE COURT:  I will rule that you have saved your

6    rights and made your Rule 29 motion at the conclusion of the

7    government's case.

8        MR. JONATHAN SHAPIRO:  Thank you.  I don't -- there

9    are a couple of things that I do want to take up.  One is with

01:23 10   respect to submission of the healthcare -- the substantive

11   healthcare fraud count to the jury.  Unlike the mail fraud

12   counts in this case, the healthcare -- the substantive

13   healthcare fraud count does not have any specific incidents of

14   the alleged fraud.

15       The count merely alleges, in Count 41 -- I don't see

16   Count 41 in the redacted copy of the indictment that you gave

17   me.  And that may be because the Court is agreeing -- in other

18   words, the count in the indictment merely says that between

19   such and such dates the defendants, all four of the defendants,

01:24 20   committed -- "Paragraphs 1 through 45 set forth above are

21   hereby realleged and incorporated."  And then it goes on to say

22   that the defendants committed healthcare fraud.  But there are

23   no real substantive counts with respect to any specific

24   incidents of healthcare fraud.  Of course, Count 42 is the

25   conspiracy to commit healthcare fraud, incorporates Paragraphs

1   1 through 45, and alleges that all of the defendants conspired

2   to commit healthcare fraud.

3        I'm not sure what the substantive healthcare fraud

4   count relates to because there are no specific incidents

5   charged.  And if there is somehow incorporated everything that

6   is in the first 45 paragraphs of the indictment but they're not

7   submitting -- or they're not required to prove any of those,

8   it's unclear what the jury has to consider and what the jury

9   has to find in order to find them guilty of the substantive

01:25 10  healthcare count as opposed to the conspiracy.  Again, as I

11  say, the redacted copy of the indictment which I have does not

12  even contain a Count 41.

13       So I object to submitting Count 41 in this form to the

14  jury because I think, No. 1, it's really indistinguishable, for

15  all intents and purposes, from Count 42, and it -- because it

16  doesn't specify any incidents or specific substantive counts of

17  healthcare fraud, it doesn't properly charge a crime, and the

18  jury would be left not knowing what would have to be proven

19  specifically to return a verdict with respect to Count 41.

01:27 20       THE COURT:  All right.  Mr. Weinreb.

21       MR. WEINREB:  Your Honor, first of all, objections to

22  the face of the indictment, if they're not raised before trial,

23  are waived.  So I would first argue that this objection has

24  been forfeited by the defendant by his failure to raise it in

25  advance of trial.

1          Secondly, I don't believe that the objection is
2    well-taken anyway.  I believe that the defendant is confusing
3    the purpose of the indictment and the purpose of the jury
4    instructions.  The purpose of the indictment is to notify him
5    of the conduct that is alleged to constitute the crime and to
6    protect him from double jeopardy by defining the full extent of
7    all the things he's being charged with so he can't be tried on
8    them again.  This indictment effectively does that.  Paragraphs
9    1 through 48, which allege many instances of particular
01:27 10   conduct, are incorporated into this count.  That's what
11   constitutes the healthcare fraud.

12          The Court will then instruct the jury on what the
13   elements of healthcare fraud are, and the jury can apply those
14   instructions to the evidence that they have seen.  And this --
15   Paragraphs 1 through 48, combined with this language, will
16   cabin their consideration of what can constitute healthcare
17   fraud in this case.

18          I mean, to say that we have not specified what the
19   alleged counts of healthcare fraud are, well, we have.  That's
01:28 20   what Count 41 is.  It's a charge of healthcare fraud.  If we
21   had written out Paragraphs 1 through 48 here, maybe this
22   objection wouldn't even have been raised.  Maybe this is the
23   confusion that this is being incorporated.  I'm not sure.

24          But, in any event, it's the government's position that
25   this is a properly pled count of healthcare fraud, that the

1    incorporation of Counts 1 through 48 put the defendant on

2    notice of what he was being charged with, protects him from

3    double jeopardy, as it was designed to do, and the instructions

4    to the jury, that they consider all the evidence that came in

5    in the case and determine whether the defendant committed

6    healthcare fraud, will guide them properly in determining

7    whether he committed it.

8         It's obvious to me that Count 41 is different from

9    Count 42.  Count 42 charges conspiracy.  It's a completely

01:29 10   different crime.  It's an agreement, not a substantive offense.

11   I don't believe that portion of the objection is well-taken.

12        THE COURT:  I'll take the matter under advisement.

13   There is one other matter -- that has nothing to do with

14   anything that we've talked about thus far -- that the Court

15   wants to call to counsel's attention, and that is, the

16   testimony of the witness, Gregg Voykhansky, who admitted under

17   oath to have committed certain matters that will be of extreme

18   interest, it seems to me, to the Board of Bar Overseers.

19        And the question is:  Is the government and/or defense

01:30 20   counsel going to inform the Board of Bar Overseers about the

21   testimony of Mr. Voykhansky?  The Court thinks it may have an

22   obligation to so notify the Board of Bar Overseers, but I want

23   to hear counsel's response first.

24        MR. WEINREB:  Your Honor, Mr. Voykhansky indicated, I

25   believe even on the witness stand, that he intended to bring it

1    to the attention of the Board of Bar Overseers.

2         THE COURT:  Well, can an attorney forego his

3    obligation to report any unethical conduct of another attorney

4    simply by hearing a comment by that attorney that he intends to

5    notify the Board of Bar Overseers?

6         MR. WEINREB:  I don't think just hearing the comment

7    would be enough.  I think that it behooves the government at

8    least, if not others as well, to make sure that he does so.  It

9    is on my list to make sure he does so.  I think that under the

01:31 10    circumstances if -- he would probably prefer to bring it their

11    attention on his own, and I don't believe enough time has

12    passed to conclude that he's not intending to do it.  I haven't

13    even checked, frankly.

14         THE COURT:  I want to put the government on notice to

15    inform the Court within, say, two weeks --

16         MR. WEINREB:  Very well.

17         THE COURT:  -- after the holiday, as to what has been

18    done in that regard so that the Court does not feel an

19    obligation to make such a disclosure itself.

01:31 20         MR. WEINREB:  I will do so, your Honor.

21         Your Honor, this was -- obviously, this Page 48 was

22    inadvertently omitted from the redacted version of the

23    indictment.

24         THE COURT:  Why don't you give Mr. Shapiro a copy as

25    well.  We'll insert it.

1           There is one other minor detail, and that is, that the

2     document -- the preliminary Presentence Report of Doctor John

3     Montoni that was marked for identification, I believe, as

4     Exhibit B, was missing a page, that is, Page 20.  It goes from

5     19 to 21.  It has only to do with net-worth analysis and

6     finances, so I presume it has no information on it that would

7     change the Court's opinion.  But it was missing a page.

8           MR. WEINREB:  I apologize, your Honor.

9           THE COURT:  And, therefore, it should be provided to

01:32 10    the Court, and it will be included in the document that is

11    preserved for appeal at the request of the defendant.

12          MR. WEINREB:  Very well.

13          MR. JONATHAN SHAPIRO:  Judge, there's another matter

14    which I want to raise, and that goes to the submission of this

15    entire indictment to the jury.  The indictment contains lots

16    and lots of stuff that hasn't been proved.  There hasn't --

17    much of it, there's no evidence about.  There are explanations

18    in the indictment about EMG testing and NCV testing about which

19    there wasn't been any expert testimony although the indictment

01:33 20    speaks to that.

21          And although the Court, no doubt, will instruct the

22    jury that the indictment is not evidence, when you have a

23    document which is so lengthy and contains such an amount of

24    factual detail which hasn't been introduced in evidence, about

25    which there hasn't been testimony -- there are discussions

1    about legal issues which aren't contained in the instructions.

2    For example, in just Paragraph 3, they talk -- they refer to

3    statutes and quote from the statutes.  They talk about an

4    individual who receives treatment can assign payment of

5    benefits directly.

6        What I'm saying is, is that there is just so much

7    information and detail here that the jury is not going to be

8    able to separate this from what they've heard on the witness

9    stand.  And giving them a document which appears to be an

01:34 10   official document, which contains all of this, which contains

11   allegations regarding other defendants, Moyseyev, Tamaren,

12   Montoni, you know, I just think it's incredibly prejudicial to

13   have this in front of the jury where they're going to -- where

14   there are allegations as to the nature of the conspiracy, what

15   Moyseyev did, what Tamaren did, what Montoni did with Mr.

16   Yelaun, when none of that stuff came into evidence.  So --

17        THE COURT:  What are you suggesting, Mr. Shapiro?

18        MR. JONATHAN SHAPIRO:  I think that the indictment

19   should be redacted to essentially have the charges that are --

01:35 20       THE COURT:  Mr. Weinreb, what's the response?

21        MR. WEINREB:  Your Honor, it's always the defendant's

22   assertion that the indictment contains allegations that weren't

23   supported by the evidence.  That's the whole defense in a case,

24   is that the government didn't prove it.

25        The jury is instructed that the indictment is simply

1    an allegation, that it's not evidence, and that they should

2    treat it as an allegation.  They're presumed to be able to

3    follow that instruction.  Furthermore -- and so I think there's

4    no legal ground for not putting it in front of a jury with an

5    appropriate limiting instruction.

6         Furthermore, it's simply impractical to redact it in

7    the way that's being suggested because Mr. Yelaun is in

8    practically every paragraph of that indictment.  I mean, it

9    says over and over and over again, the defendants or someone

01:36 10   exacting on their behalf did that, or the defendants did that,

11   the defendants did this.  He's one of the defendants.  There's

12   no portion of it that doesn't relate to him or virtually no

13   portion of it.  I simply think that that's not a well-grounded

14   objection.

15        THE COURT:  You're suggesting that there's no part of

16   multipage indictment that could be redacted without affecting

17   the government's case?

18        MR. WEINREB:  Well, I wouldn't say that there's no

19   sentences in it.  If the defense wants to propose some

01:37 20   additional redactions, I'm certainly willing to look at them

21   and if they don't change the meaning of it.

22        The jury is charged that the government has to prove a

23   conspiracy as charged in the indictment.  Everybody seems to

24   agree that that's what the jury has to find.  And if parts of

25   the indictment begin to be slashed away or cut off, I think

1    that it distorts what's charged in the indictment.

2            MR. JONATHAN SHAPIRO:  Well, the --

3            MR. WEINREB:  The jury will decide whether it's proved

4    or not.  I think they can understand this is a charge.  What

5    came into court was the evidence.  They have to determine

6    whether we've proved it or not.

7            THE COURT:  All right.

8            MR. JONATHAN SHAPIRO:  What I'm suggesting is

9    simply -- for example, if you look at Page 41 which has Counts

01:38  10   1 through 37, I think what should go to the jury is simply the

11   charge set forth in Paragraph 2, 3 and 4 -- 4 and -- actually,

12   simply Pages 41 through 44 sets out what the charge is:

13   conspiracy to commit mail fraud; discusses generally the nature

14   of what the -- what mail fraud is; and has the specific counts

15   and the specific dates and documents in which it's charged.  I

16   think that's sufficient.

17           The same is true of Count 41, which is okay, actually,

18   because it doesn't say anything; and 42, there should be simply

19   what's contained essentially on Page 49 and 50.

01:39  20           THE COURT:  Well, what I'm going to do -- Mr. Shapiro,

21   if you can work out with the government any further redactions

22   between now and 3:30, submit it to the Court.  If you can't and

23   you still are dissatisfied and want to propose redactions in

24   the indictment, then you submit to me a copy that's clearly

25   redlined or whatever way that makes it obvious to me what you

1   want out.  And I will assume that if it comes to me, that the

2   government hasn't agreed to it, and I'll look at it.

3          But it's a little late in the game, it seems to me, to

4   be dealing with this.  But if there are parts of the indictment

5   that you believe have absolutely nothing to do with the alleged

6   conspiracy that the jury is being asked to consider, then I

7   will consider redacting that portion of the indictment.

8          MR. JONATHAN SHAPIRO:  It's not that they have nothing

9   to do with it.  It's just that they haven't been proved.  A

01:40 10   good example is on Page 3.

11          THE COURT:  I don't have the indictment in front of

12   me.

13          MR. JONATHAN SHAPIRO:  What it says here is -- the

14   government spends a whole page discussing needle EMG tests.  It

15   says, "Both require specialized training to administer and

16   interpret."  They talk about the details of the test, how it's

17   displayed.  It says, "The individual interpreting the EMG..."

18   Again, it goes on and on.

19          THE COURT:  Why is that necessary, Mr. Weinreb?

01:41 20          MR. WEINREB:  Your Honor, I'm going to make an

21   argument to the jury, and the Court is going to instruct them

22   that that's not evidence.  These are the allegations in the

23   indictment.  This is what we allege is the crime that was

24   committed.  And we put on evidence to prove it.  Either we

25   proved or we didn't.  The jury needs to know what the

1    allegations are to know whether we proved the allegations.

2         The counts of the indictment incorporate Paragraphs 1

3    through 45 because Counts 1 through 45 explain what the scheme

4    was to defraud.  It's not a drug case where you can just say

5    distributed cocaine.  It's more complicated than that.  So

6    Counts 1 through 45 set out what it is.

7         But it's still just allegations.  It's not evidence

8    and I can't -- I mean, jurors are routinely instructed in every

9    criminal trial that the allegations in the indictment are not

01:42 10   evidence.  They're just allegations.  And the question is

11   whether the government has proved them or not.  This case is no

12   different from any other case in that respect.

13        To the extent that -- if there were counts in this

14   indictment that didn't name Mr. Yelaun, that just named the

15   other defendants, then I would have no problem with just

16   completely redacting them.  That's done routinely, also, and

17   I'd be happy to do that.  As it happens, he's charged in every

18   count, so there really is no part that can be redacted or

19   excised without affecting the charge against Mr. Yelaun.

01:42 20        MR. JONATHAN SHAPIRO:  I don't want to belabor this,

21   but what the government is doing here would be like, in a drug

22   case, if the government had -- charges a defendant with

23   conspiring to distribute cocaine or heroin or whatever and

24   then, in 50 pages, describes in detail everything the defendant

25   is alleged to have done and so on, as opposed to simply putting

1    the charge in front of the jury.  And that, I think, is

2    appropriate and can be done, and we will submit something.

3            But to put in in this case 100 pages of factual

4    allegations, some of which have been proved, some of which

5    haven't, many of which are irrelevant, I think is extremely

6    prejudicial.  But I will leave that as it may, and I will

7    submit a redacted copy.

8            THE COURT:  At 3:30 or before.

9            MR. JONATHAN SHAPIRO:  Okay.  There's one other brief

01:43 10   matter I want to mention, and that is, the government's theory

11   in this case is that these needle EMG tests were not done.  And

12   that is the source, the basis, of the fraud.  There are a

13   number of counts that the government seeks to go to the jury

14   involving witnesses who did not testify and for whom there is

15   no evidence in this case at all that they didn't get an EMG

16   test.

17           So, for example, Stefanie Martinez, Secundino Reyes,

18   Ada Mateo, Yicauri Rodriguez, Carmen Marmolejos, these are all

19   reflected in counts of the indictment where the underlying

01:44 20   fraud is that they didn't get an EMG test, and there were --

21   and there were bills submitted for EMG tests.

22           With respect to all of those witnesses, there's no

23   evidence that they didn't get an EMG test, simply no evidence.

24   These were all cases where Doctor Montoni signed the EMG

25   report.  But Doctor Montoni testified that, No. 1, he thought

1    that the tests had been done but that, in any case, he didn't

2    -- there's no evidence in the record that the tests weren't

3    done because these particular witnesses didn't testify.

4         And so for that reason, I object to the submission of

5    Counts 17, 23, 24, 27, 28, 30, 31, 34, 36 and 37 on the ground

6    that the government just didn't prove the underlying fraud or

7    the underlying EMG test didn't take place.

8         THE COURT:  All right.  Mr. Weinreb.

9         MR. WEINREB:  Your Honor, this is essentially arguing

01:45 10   Mr. Shapiro's Rule 29 motion.  As the Court knows, the standard

11   for going to the jury is slight.  Any reasonable juror could

12   conclude beyond a reasonable doubt that the defendant is guilty

13   of those counts.  They have to go to the jury.

14        The government's evidence that these tests were not

15   done is that Doctor Montoni signed them all, and he said that

16   he had never done an EMG test, that he didn't even know how to

17   do one.  The fact that he may have believed that they were done

18   is of no moment at all.  There was testimony from several

19   people, from Mr. Bousa, the EMG technician; from Doctor

01:46 20   Chatterjee, who actually performed EMGs, that when an EMG test

21   is done, when it is really done, it is done by a doctor who

22   sticks needles into the person's body, and that the report is

23   generated right then and there and is typically reviewed by the

24   doctor and signed by him.

25        The fact that the defendant was giving Doctor Montoni,

1    a chiropractor, reports of EMG tests that have no doctor's name

2    at the bottom and are just blank and asking him to sign them is

3    itself enough for a juror to conclude that those tests were not

4    done.

5        But even if that were not enough, for each of those

6    tests -- I believe for each of them -- we have shown that

7    there's a duplicate test that is exactly the same in every

8    respect, same results and so on, just with somebody else's name

9    on it.  That's yet additional evidence from which the jurors

01:47 10  could conclude that these tests were not done.  I think there's

11   ample evidence from which the jury could conclude that every

12   test that is stamped with Doctor Chatterjee's signature or that

13   is signed by Doctor Montoni is a fraudulent test.

14       Finally, it makes no difference if the tests were

15   done.  Frankly, even if the EMG tests were done, the fact that

16   they were signed by Doctor Montoni is itself a fraud because

17   that is a fact -- a false -- material, false fact on which the

18   insurance companies relied in paying those tests.  Person after

19   person from the insurance companies testified that in paying

01:47 20  these claims one of the things they consider is whether the

21   test is done.  And in determining whether the test was done,

22   they consider whether it was signed by a doctor.  These tests

23   were signed fraudulently.  Montoni certified he had done them

24   when they weren't done by him.

25       THE COURT:  All right.  I will take the matter under

1  advisement.  If there are to be any redacted indictment

2  submitted to me, it will be by 3:30.  Thank you.

3  (Whereupon, at 2:43 p.m. the hearing concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, Cheryl Dahlstrom, RMR, and Official Reporter of the

5    United States District Court, do hereby certify that the

6    foregoing transcript, from Page 1 to Page 53, constitutes, to

7    the best of my skill and ability, a true and accurate

8    transcription of my stenotype notes taken in the matter of

9    Criminal Action No. 05-10010, United States of America vs.

10   Severin Yelaun.

11

12

13

14

15

16                         /s/ Cheryl Dahlstrom

17                         Cheryl Dahlstrom, RMR

18                         Official Court Reporter

19

20

21

22

23

24

25